IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL BURR, GABRIELLE EIMONTAITE, AND KEVIN VILLARREAL, individually and on behalf of all others similar situated, <br><br> Plaintiffs, <br><br> v. <br><br> LOADSMART, INC., <br><br> Defendant. | Case No. 23 C 3708 <br><br> Hon. LaShonda A. Hunt |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Michael Burr, Gabrielle Eimontaite, and Kevin Villarreal, individually and on behalf of all others similarly situated, brought this lawsuit against Defendant Loadsmart, Inc. for allegedly violating the Fair Labor Standards Act ("FLSA"), Illinois wage laws, and New York labor laws. Subsequently, two additional individuals, Jared Vick and Absalom Givens, consented to become plaintiffs in this collective action (dkt. 9). Currently before the Court is Plaintiffs' opposed motion for court-authorized notice pursuant to 29 U.S.C. §216(b) (dkt. 34). For the reasons discussed below, the motion is granted.

## BACKGROUND

Defendant provides logistics services. (Def.'s Resp. at 6, Dkt. 36). The company has offices in Chicago, Illinois, Phoenix, Arizona, and up until approximately January 2021, in New York, New York. (Answer ¶ 35, Dkt. 22). Defendant employs Carrier Sales Representatives, Account Sales Representatives, Digital Sales Representatives, and Sales Development Representatives, all of which Plaintiffs collectively refer to as "Sales Representatives." (Answer ¶ 1).

Plaintiff Burr was employed by Defendant as an Account Sales Representative in Chicago, Illinois from March 2021 to May 2022. (Ex. A, Burr Decl. ¶ 2, Dkt. 34-2). Likewise, Plaintiff Vick was employed by Defendant as an Account Sales Representative in Chicago, Illinois from approximately February 2021 to February 2022. (Ex. D, Vick Decl. ¶ 2, Dkt. 34-5). Plaintiff Givens was also employed by Defendant as an Account Sales Representative in Chicago, Illinois from approximately August 2021 to June 2022. (Ex. E, Givens Decl. ¶ 2, Dkt. 34-6). As Account Sales Representatives, they were responsible for the first part of the load cycle—booking shipments for new and/or existing clients. (Burr Decl. ¶ 3; Vick Decl. ¶ 3; Givens Decl. ¶ 3). Their job duties included "selling [Defendant's] third-party logistics products and services to clients and potential clients through calling, emailing, researching, and prospecting." (Burr Decl. ¶ 3; Vick Decl. ¶ 3; Givens Decl. ¶ 3).

Plaintiff Eimontaite was employed by Defendant as a Carrier Sales Representative from approximately April 2021 to June 2021. (Ex. B, Eimontaite Decl. ¶ 2, Dkt. 34-2). She worked remotely and was associated with Defendant's Chicago office. (*Id*.) Similarly, Plaintiff Villarreal was employed by Defendant as a Carrier Sales Representative from July 2019 to December 2020 in New York. (Ex. C, Villarreal Decl. ¶ 2, Dkt. 33-4). As Carrier Sales Representatives, they were responsible for the second part of the load cycle—finding a carrier to move a load after it was booked by an Account Sales Representative. (Eimontaite Decl. ¶ 3; Villarreal Decl. ¶ 3). Their job duties included "selling products and services by prospecting for new carriers via online research, cold calls, emails, LinkedIn, and virtual meetings, and selling loads to existing and new carrier clients." (Eimontaite Decl. ¶ 3; Villarreal Decl. ¶ 3).

Plaintiffs were each paid a base salary and eligible for commission; however, they were not eligible for overtime because their positions were classified as exempt. (Burr Decl. ¶¶ 12-14;

2

Eimontaite Decl. ¶¶ 12-14; Villarreal Decl. ¶¶ 12-14; Vick Decl. ¶¶ 12-14; Givens Decl. ¶¶ 12-14). Nevertheless, Plaintiffs each assert that they regularly worked over 40 hours a week and were required to do so to meet sales quotas and other job requirements, such as being available to clients outside of business hours. (Burr Decl. ¶ 11; Eimontaite Decl. ¶ 11; Villarreal Decl. ¶ 11; Vick Decl. ¶ 11; Givens Decl. ¶ 11). Based on their observations, Plaintiffs believe that other "Sales Representatives" had the same job duties, compensation structure, and regularly worked outside of business hours. (Burr Decl. ¶ 16; Eimontaite Decl. ¶ 16; Villarreal Decl. ¶ 16; Vick Decl. ¶ 16; Givens Decl. ¶ 16). Accordingly, Plaintiffs have moved for authorization to send notice of this FLSA action to "all individuals who work or have worked at Loadsmart as Sales Representatives nationwide from August 5, 2019 . . . through the issuance of the Court's order." (Pls.' Mem. at 26, Dkt. 35).

## **LEGAL STANDARD**

"Under the FLSA, employees are entitled to overtime pay (i.e., one and one-half times the regular rate) for any hours worked in excess of forty hours per week, unless they come within one of the various exemptions set forth in the Act." *Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 572 (7th Cir. 2012) (citing 29 U.S.C. §§ 207, 213). Section 216(b) of the FLSA gives employees the right to bring their FLSA claims through a collective action on behalf of themselves and other "similarly situated" employees. *Bigger v. Facebook, Inc.,* 947 F.3d 1043, 1049 (7th Cir. 2020) (citing 29 U.S.C. § 216(b). Unlike a Rule 23 class action, a FLSA collective action requires that the members opt in to be bound, rather than, as in a class action, opting out to not be bound. *See Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 877 (7th Cir. 2012).

"The Seventh Circuit has not articulated a standard for certifying a collective action under the FLSA." *Coulter v. Villa Healthcare Mgmt., Inc.*, No. 22 C 1970, 2024 WL 3352631, at *1

(N.D. Ill. July 9, 2024). However, the Supreme Court and Seventh Circuit have declared that district courts have "wide discretion to manage collective actions." *Alvarez v. City of Chi.*, 605 F.3d 445, 449 (7th Cir. 2010) (citing *Hoffmann-La Roche v. Sperling,* 493 U.S. 165, 171 (1989)). Thus, courts in this district have adopted a two-step process for determining whether an FLSA lawsuit should proceed as a collective action. *Williams v. Ests. of Hyde Park, LLC,* No. 19 C 2288, 2020 WL 1812386, at *1 (N.D. Ill. Apr. 9, 2020) ("Neither Congress nor the Seventh Circuit has specified the procedure courts should use to decide FLSA certification and notice issues, but collective FLSA actions in this district generally proceed under a two-step process."); *see also In re New Albertsons, Inc.*, No. 21-2577, 2021 WL 4028428, at *1-2 (7th Cir. Sept. 1, 2021) (declining to review the district court's order granting conditional certification where the district court used the two-step process "regularly used in the Northern District of Illinois").

This case is at step one, the conditional certification stage. "At this first stage, the court determines whether to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiff with respect to whether an FLSA violation has occurred." *Vargas v. Sterling Eng'g, Inc.*, No. 18 C 5940, 2020 WL 1288982, at *2 (N.D. Ill. Mar. 18, 2020). "The plaintiff has the burden of showing that other potential claimants are similarly situated by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Id*. The standard of proof at this stage is low and courts use a "lenient interpretation" of the term "similarly situated" in deciding whether plaintiffs meet this burden. *Grosscup v. KPW Mgmt.*, Inc., 261 F. Supp. 3d 867, 870 (N.D. Ill. 2017). Notwithstanding that low burden, plaintiffs must still provide some evidence in the form of affidavits, declarations, deposition testimony, or other documents to support the allegations that other similarly situated employees were subjected to a common policy that violated the law.

4

*Vargas*, 2020 WL 1288982, at *2. But at this initial stage, courts do not make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant. *Id*. After the court has found that putative collective action members are similarly situated, the court has discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) by facilitating notice to potential plaintiffs. *Id.* (citing *Hoffmann-La Roche*, 493 U.S. at 169).

The second step, which occurs after the opt-in and discovery process has been complete, is more stringent. *Vargas*, 2020 WL 1288982, at *2. "At that point, courts should reevaluate the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Id.*

## **DISCUSSION**

The parties present three issues for consideration: (1) the standard of proof that should apply to determine if conditional certification is appropriate at this stage of the case; (2) whether Plaintiffs and the proposed collective are similarly situated; and (3) the appropriate notice form that should be distributed to the potential plaintiffs, as well as the proposed plan for notice. The Court addresses each in turn below.

### I. **Applicable Standard**

As an initial matter, the parties dispute what standard of proof is required at this stage of the case. Plaintiffs argue the lenient standard described above should apply, while Defendant contends that because some discovery has occurred, the Court should apply an intermediate standard of proof. As mentioned, the Seventh Circuit has not identified a specific standard for certifying a collective action under the FLSA. *Coulter*, 2024 WL 3352631, at *1.[1]

---

[1] The Fifth Circuit and Sixth Circuit recently examined this question in detail. *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 434 (5th Cir. 2021) ("[A] district court must rigorously scrutinize the realm of 'similarly situated'

Defendant relies on *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 854 (N.D. Ill. 2013). There, the plaintiffs moved for conditional certification after more than 11 months of discovery, which included three 30(b)(6) depositions and two sets of interrogatories and requests for production. *Id*. at 854. Additionally, the defendants produced over 5,800 pages of documents and submitted declarations from 25% of the putative class members. *Id*. There, the court recognized that although the lenient standard generally applies, it could be "supplanted by a more rigorous examination standard if there has been more extensive discovery." *Id*. at 856. Based on the posture of the proceedings, the court applied a heightened standard and considered the evidence submitted by both parties, but because the case had not progressed to stage two and the factual record was incomplete, plaintiffs were required only "to make a modest 'plus' factual showing that there [was] a group of potentially similarly situated plaintiffs that may be discovered by sending opt-in notices." *Id*. at 856.

Defendant further cites *Steger v. Life Time Fitness, Inc.*, No. 14 C 6056, 2016 WL 245899, at *1 (N.D. Ill. Jan. 21, 2016). There, the plaintiffs moved for conditional certification after completing the first phase of discovery, which included written discovery, a 30(b)(6) deposition, and depositions of the named plaintiffs. *Id*. at 2; *see also Steger*, No. 14 C 6056, Defs.' Resp. in Opp. at 3, n.1, ECF No. 112. Because the first phase of discovery was complete, the court applied

---

workers, and must do so from the outset of the case, not after a lenient, step-one 'conditional certification.'"); *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1011 (6th Cir. 2023) ("[F]or a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves."). Defendant does not contend that either of these standards apply. Even so, courts in this district have declined to follow *Swales* or *Clark*. *See Calloway v. AT&T Servs., Inc.*, No. 18 C 6975, 2024 WL 1328823, at *3 (N.D. Ill. Mar. 28, 2024) (denying defendant's request to follow *Clark* and stating that "[a]s the lower courts await Supreme Court instruction on FLSA collective certification, the [c]ourt will continue to apply the two-step framework in this case, considering whether the [p]laintiffs have made a modest factual showing."); *O'Neil v. Bloomin' Brands Inc.*, 707 F. Supp. 3d 768, 776, n.2 (N.D. Ill. 2023) (finding that defendant's argument that *Swales* and *Clark* show a shift from the two-stage approach to certification was unpersuasive because there was an "absence of a Seventh Circuit case overruling the historic approach that courts in this District take").

the heightened intermediate standard, which is "more stringent than the first-step certification standard but more lenient than the second-step decertification standard." *Steger*, 2016 WL 245899 at *2.

Plaintiffs contend that *Bergman* and *Steger* are distinguishable because more discovery occurred in those cases than in the present case. The Court agrees. Here, the parties have engaged in less than three months of limited initial discovery. Neither party has taken any depositions and Defendant has not provided a list of potential plaintiffs. As a result, the Court applies the more lenient "modest factual showing" standard in assessing whether Plaintiffs and the proposed collective are similarly situated. *See DeMarco v. Nw. Mem'l Healthcare*, No. 10 C 397, 2011 WL 3510905, at *2 (N.D. Ill. Aug. 10, 2011) (finding that the record was "far too limited to justify applying the more stringent review to [plaintiff's] conditional certification motion" where plaintiff did not have a chance to depose or seek written discovery from defendant's declarants); *Vargas*, 2020 WL 1288982, at *2 (finding that the lenient standard applied where the parties engaged in some discovery, including written discovery and depositions of plaintiff and defendant's designated 30(b)(6) witness, but defendant had not provided a list of potential plaintiffs); *Wynn v. Express, LLC*, No. 11 C 4588, 2012 WL 386716, at *2 (N.D. Ill. Feb. 6, 2012) (finding that although the parties had engaged in five months of discovery, the lenient standard applied because defendants submitted affidavits from individuals whom plaintiffs had not deposed).

## II. Similarly Situated

Pointing to its own evidence, including declarations from its managers and executives, Defendant argues that conditional certification is not appropriate because the positions encompassed within the proposed collective are materially different from one another as they have different job duties and evaluation and compensation structures. In response, Plaintiffs assert that

7

the small differences identified by Defendant do not preclude notice. Plaintiffs have the better argument. Notably, at this initial stage, the court cannot specifically consider opposing evidence presented by Defendant. *See Vargas*, 2020 WL 1288982, at *2. And more importantly, "plaintiffs can be similarly situated for purposes of the FLSA even though there are distinctions in their job titles, functions, or pay." *Jirak v. Abbott Lab'ys, Inc.*, 566 F. Supp. 2d 845, 848 (N.D. Ill. 2008).

Contrary to Defendant's argument, Plaintiffs have provided sufficient evidence to meet their minimal burden. First, Plaintiffs have submitted several declarations from Carrier Sales Representatives and Account Sales Representatives, indicating that they perform similar job duties, including selling Defendant's logistics products and services, prospecting for new clients, and maintaining a book of business. "Courts regularly find . . . that a potential class is similarly situated for purposes of conditional certification, where, as here, the plaintiff has provided multiple affidavits from workers from multiple locations demonstrating that they perform similar duties." *O'Neil*, 707 F. Supp. 3d at 778 (internal alterations omitted). Defendant contends that the declaration should be deemed deficient because they each contain the same conclusory language. "The Court interprets [Defendant's] allegations as attacks on the declarants' credibility. The Court, however, does not assess 'witness credibility' at this stage." *Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 15 C 10447, 2016 WL 1043429, at *5 (N.D. Ill. Mar. 16, 2016).

Additionally, Plaintiffs have provided job postings of each of the four positions, which further show the overlap with these roles. Specifically, the common job duties include prospecting for new business and managing existing relationships. That the positions may have some differences, such as focusing on different parts of the sales cycle, working with different customer bases, or selling different products, does not alter the analysis. *See Jirak*, 566 F. Supp. 2d at 847 (conditionally certifying collective, which consisted of five different types of sales representatives,

because "despite some variations in their job duties, there [was] evidence that pharmaceutical representatives had the same essential responsibility: calling on physicians and promoting [d]efendant's pharmaceutical products"). Indeed, "there is 'wide consensus' in this District that arguments about dissimilarities in the collective are more appropriately decided at step two, after the composition of the class is known and full discovery has taken place." *Ruffolo v. LaSalle Grp., Inc.*, No. 18 C 3305, 2019 WL 978659, at *5 (N.D. Ill. Feb. 28, 2019). Thus, Defendant's "rigorous comparison of day-to-day job responsibilities is inappropriate at the conditional certification stage." *Id*.

Furthermore, it is undisputed that each of the positions is classified as exempt. (*See* Def.'s Resp. at 7, Dkt. 36) ("[T]he only commonality between these positions is their exempt classification."). Defendant contends that Plaintiffs' reliance on a shared classification is insufficient to establish that the proposed collective is similarly situated. True, shared classification, standing alone, may be insufficient to satisfy the low threshold for conditional certification. *Brown v. Barnes & Noble, Inc.*, 252 F. Supp. 3d 255, 262 (S.D.N.Y. 2017). But as the Court already pointed out, Plaintiffs here rely on much more than their shared classification. Considering all the circumstances, the Court finds Plaintiffs' allegations sufficient to warrant conditional certification. *See White v. APFS LLC*, No. 23 CV 5464, 2024 WL 4346891, at *3 (N.D. Ill. Sept. 30, 2024) (Taken together, plaintiff has shown that defendant's recruiters are subject to "a common policy or plan" whereby defendant intentionally refuses to pay recruiters overtime by misclassifying them as exempt.); *Tamas v. Fam. Video Movie Club, Inc.*, No. 11 C 1024, 2013 WL 4080649, at *3 (N.D. Ill. Aug. 13, 2013) (finding that plaintiff's allegation that defendant classified all salaried manager as exempt was sufficient to warrant conditional certification under the FLSA); *Piazza v. New Albertsons, LP*, No. 20 C 3187, 2021 WL 365771, at *6 (N.D. Ill. Feb. 3, 2021)

(finding that plaintiff's allegation that defendants classified all assistant store directors as exemption was sufficient to grant conditional certification).

### III. Notice

Finding that conditional certification is appropriate, the Court next considers the parties arguments regarding notice. Plaintiffs attached proposed notice forms (Exhibit AA, Dkt. 34-28) and a proposed Consent to Join ("CTJ") form (Ex. BB, Dkt. 34-29) to their motion. Defendant does not make any specific objections to these items; instead, it requests that the Court order the parties to meet and confer regarding the notice form. The Court agrees that is a reasonable way to proceed.

Additionally, Plaintiffs have also proposed a plan for informing potential opt-in plaintiffs of this litigation. Specifically, Plaintiffs request (1) a 90-day opt-in period, (2) that notice be sent via U.S. Mail, email, text message, and social media (LinkedIn), (3) that notice be posted on a website through which opt-ins can electronically submit CTJ forms, and (4) that a reminder notice be sent to any potential plaintiff who has not returned a CTJ form halfway through the notice period. Defendant does not object to sending notice via mail and email, sending a reminder notice, or establishing a website; however, they do object to (1) the proposed 90-day notice period and (2) sending notice via text and social media. The Court addresses each of these objections below.

First, Defendant contends that Plaintiffs have provided no rationale to support their request for a 90-day opt-in period. Instead, Defendant suggests that a 45-day period would be more appropriate. "Courts in this circuit have approved opt-in periods ranging from 45 to 120 days." *Nehmelman v. Penn Nat. Gaming, Inc.*, 822 F. Supp. 2d 745, 764 (N.D. Ill. 2011). Nevertheless, in their response, Plaintiffs offered to settle for a 60-day period. The Court appreciates Plaintiffs' compromise and finds that 60 days is a reasonable period that provides ample opportunity for

prospective class members to opt in. *See Smallwood v. Illinois Bell Tel. Co.*, 710 F. Supp. 2d 746, 753 (N.D. Ill. 2010) (finding that 60-day notice period was appropriate); *Pizano v. Big Top Party Rentals, LLC*, No. 15 C 11190, 2018 WL 2193245, at *8 (N.D. Ill. May 14, 2018) ("The [c]ourt sees nothing unreasonable about the application of a 60-day notice period.").

Second, Defendant contends that sending notice via text message and social media is intrusive, especially because Plaintiffs have not demonstrated that notice via mail or email would be insufficient. Regarding notice via text, Plaintiffs argue it is appropriate because "many Americans use text messages as their primary contact . . . much more than they would email or regular mail." (Pls.' Reply at 21, citing *Yates v. Checkers Drive-In Restaurants, Inc.*, No. 17 C 9219, 2020 WL 6447196, at *3 (N.D. Ill. Nov. 3, 2020)). The Court agrees with Plaintiffs. "Authorization of notice by text message is increasingly common, particularly where potential plaintiffs are transitory," which at least one of the Plaintiffs claims is the case here. *Campbell v. Marshall Int'l, LLC*, 623 F. Supp. 3d 927, 935 (N.D. Ill. 2022). Additionally, "any moderate intrusion caused by such a text message is outweighed by the interest in apprising all potential class members of this action." *Dennis v. Greatland Home Health Servs., Inc.*, 438 F. Supp. 3d 898, 902 (N.D. Ill. 2020). Finally, contrary to the out-of-circuit case law Defendant cites, the Court finds that "there is less of a risk that potential class members would find this text message notice to be spam because it relates to a company that an individual has worked for in the past three years or so, or may continue to be working." *Waller v. AFNI, Inc.*, No. 20 C 1080, 2020 WL 6694298, at *5 (C.D. Ill. Nov. 13, 2020).

As to providing notice via social media, namely LinkedIn, Plaintiffs argue that it is appropriate because social media has become a primary means of communication and the potential Plaintiffs in this case, Sales Representatives, are likely to maintain an active presence on LinkedIn

for work. Plaintiffs cite to a handful of cases from courts around the country that have authorized notice via social media. The Court finds that notice via LinkedIn would be appropriate here. The job descriptions provided by Plaintiffs demonstrate that the potential plaintiffs were required to use social media, including LinkedIn, to perform their job duties. Additionally, at least one of the Plaintiffs stated in their affidavit that "as sales professionals, I and my co-workers frequently use LinkedIn for work." Thus, providing notice via LinkedIn will likely increase the efficacy of notice. *See Weinstein v. 440 Corp.*, No. 19 C 105, 2019 WL 5704137, at *5 (N.D. Ga. Nov. 4, 2019).

## CONCLUSION

For all the foregoing reasons, the Court grants Plaintiffs' motion for court-authorized notice under 29 U.S.C. §216(b). The parties are ordered to meet and confer regarding the content of the proposed notice and submit a joint proposed notice form by 1/17/25. If the parties are unable to reach an agreement, they should file a joint status report containing their separate proposals by the same date.

**DATED**: December 16, 2024  **ENTERED**:

LaShonda A. Hunt
United States District Judge